[Crim. No. 216. Department Two.—September 4, 1897.]

THE PEOPLE, RESPONDENT, *v.* FRANK WILSON, APPELLANT.

CRIMINAL LAW—ASSAULT WITH A DEADLY WEAPON—INTENT TO MURDER ARRESTING OFFICER—EVIDENCE—PROOF OF MOTIVE—DISTINCT CRIME. Where a defendant is accused of an assault with a deadly weapon with intent to murder a police officer who was endeavoring to arrest him for shooting at another person, evidence is admissible to show the circumstances of the previous shooting for the purpose of showing the motive of the defendant in the commission of the offense charged, and to prove his intent in resisting arrest and assaulting the policeman; and the fact that such evidence of motive and intent includes the proof of a distinct offense for which the arrest was sought, does not render such evidence inadmissible.

ID. — PROOF OF SPECIFIC INTENT TO TAKE LIFE — QUESTION FOR JURY. When there is evidence, aside from the presumption arising from the use of a deadly weapon, tending to prove the specific intent to murder, as charged in the indictment, such intent is a question of fact for the jury, and its verdict will not be set aside for insufficiency of the evidence to sustain it.

ID.—JUSTIFICATION OF ARREST—REASONABLE CAUSE TO BELIEVE COMMISSION OF FELONY—INSTRUCTION.—In order to justify an arrest by an officer without a warrant, it is sufficient that he has reasonable cause to believe that a felony had been committed, and it is not necessary to prove that a felony had been in fact committed; and it is proper to instruct the jury that whether a felony was in fact committed is not material in the case.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial.   W. L. PIERCE, Judge.

The facts are stated in the opinion.

*J. S. Callen,* and *Haines & Ward,* for Appellant.

The admission of evidence of a distinct offense committed by the defendant, being no part of the *res gestæ,* nor connected with the act charged in the indictment, was prejudicial error.   (*People v. Barnes,* 48 Cal. 551; *People v. Hartman,* 62 Cal. 562; *People v. McNutt,* 64 Cal. 116; *People v. Stewart,* 85 Cal. 174; *People v. Benoit,* 97 Cal. 249.)   The instructions did not withdraw the objectionable evidence, and it was error to instruct that there was no evidence that a prior felony had been committed. Such instruction invaded the province of the jury. (*People v. King,* 27 Cal. 507; 87 Am. Dec. 95.)

*W. F. Fitzgerald, Attorney General, W. H. Anderson, Assistant Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

The evidence of the circumstances attending the prior shooting was admissible to show the intent or motive of the defendant in resisting the arrest, and committing the offense charged, although tending to show the commission of another offense. (*People v. Craig,* 111 Cal. 460, 468; *People v. Bidleman,* 104 Cal. 613; *People v. Lane,* 101 Cal. 517; *People v. Walters,* 98 Cal. 138; *Moore v. United States,* 150 U. S. 57; *People v. Harris,* 136 N. Y. 423; *Pierson v. People,* 79 N. Y. 424; 35 Am. Rep. 524; *Commonwealth v. Coe,* 115 Mass. 481, 501; *Commonwealth v. McCarthy,* 119 Mass. 354, 355; *State v. Patza,* 3 La. Ann. 513; *Kramer v. Commonwealth,* 87 Pa. St. 299, 301; *Swan v. Commonwealth,* 104 Pa. St. 218, 220; *Goerson v. Commonwealth,* 106 Pa. St. 477, 496; 51 Am. Rep. 534; *State v. Myers,* 82 Mo. 562; 52 Am. Rep. 389.)   The determination of the question of intent is peculiarly within the province of the jury; and only in

the total absence of any evidence of such intent would this court disturb a jury's finding upon that question. (*People* v. *Estrada*, 53 Cal. 601; *People* v. *McFadden*, 65 Cal. 445; *People* v. *Mize*, 80 Cal. 40, 45; *People* v. *Swalm*, o0 Cal. 46; 13 Am. St. Rep. 96; *People* v. *Landman*, 103 Cal. 577.)

HAYNES, C.—The defendant was indicted by the grand jury of San Diego county for the crime of an assault with a deadly weapon, with intent to murder, committed upon the person of John M. McInnes. Upon his trial he was found guilty as charged, and sentenced to imprisonment for three years in state's prison, and this appeal is from the judgment and an order denying a new trial.

Defendant was the keeper of a saloon in the city of San Diego. On the night of December 16, 1895, three policemen—Sergeant Cota and officers Warner and McInnes—went to defendant's saloon for the purpose of arresting him for shooting a soldier named Kelley, which had been reported to the police office by telephone. Sergeant Cota first sent Warner and McInnes to the saloon to watch the defendant while he went to the hospital for information as to the alleged shooting, and was there informed that Kelley had been shot by defendant in the saloon. The sergeant returned two or three minutes before midnight, and told defendant "to consider himself under arrest for shooting that soldier." Defendant asked if he had a warrant. The sergeant replied: "No; I don't need one now." Defendant then ordered all persons—there were others besides the officers there—to leave the saloon, as it was closing-up time. The sergeant then directed the officers to arrest him. The defendant then reached for his pistol, and, as he raised it, the sergeant shot at him. Several shots were fired, some by the defendant and some by the police, and one of defendant's shots hit officer McInnes; and it was for shooting McInnes that he was indicted and found guilty in this proceeding.

Upon the trial, Kelley and his companion, Carring-

ton, were called as witnesses for the prosecution, and were permitted to testify, over the objection of the defendant, to the circumstances of an assault committed by him upon Carrington for "pulling a gun" on him, and also to the shooting and wounding of Kelley, which occurrences took place in the same saloon between ten and eleven o'clock the same night, and grew out of a controversy between defendant and Kelley in shaking dice, Carrington being the stakeholder.

Appellant contends that the ruling of the court was erroneous, in that it permitted the prosecution to prove the commission of a separate and distinct offense, and that he was prejudiced thereby.

It is undoubtedly the general rule that evidence of another offense than that under investigation is not admissible when not relative to the issue being tried.

It is contended by respondent, however, that the evidence objected to is relative, as "it shows defendant's motive, and tends to prove his intent in resisting arrest and assaulting officer McInnes."

If such is the effect of the evidence, it must be admissible, because the motive and intent are within the issue being tried, and the fact that the testimony also had a tendency to show that defendant had been guilty of another assault upon another person, prior to the assault for the commission of which he was being tried, would not be sufficient to exclude it, if it were otherwise competent.   (*Moore* v. *United States,* 150 U. S. 61.)

It is true the officers were not being tried for making an unauthorized arrest, but nevertheless it was competent to show that the arrest was authorized, and that the defendant knew the fact which justified the arrest, because such knowledge negatived his right to resist arrest, and therefore tended to characterize the assault upon the officer for which he was being tried; and in this view of the evidence, it was admissible as affecting the intent with which the assault was made, and to negative any possible claim that he was resisting an unauthorized arrest.

In support of this view of the evidence in question the learned attorney general cites a large number of cases which more or less directly support the view we have taken. Among these may be named: *People v. Craig,* 111 Cal. 460, 468, *People v. Bidleman,* 104 Cal. 613, *People v. Lane,* 101 Cal. 517, and *People v. Waters,* 98 Cal. 138.

If there had been no prior assault committed by the defendant upon Kelley or Carrington, the intent with which he fired upon McInnes would necessarily appear to be different from his intent in doing the same act with the personal knowledge that he had committed the prior offense.

In *Hendrickson v. People,* 10 N. Y. 13, 31, 61 Am. Dec. 721, it is said that " Considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind would a motive be trifling and insignificant which might prompt the commission of a great crime. We can never say the motive was adequate to the offense, for human minds would differ in their ideas of adequacy according to their own estimate of the enormity of the crime, and a virtuous mind would find no motive sufficient to justify the felonious taking of human life." This view, we think, is in entire accord with the conclusion of the learned counsel for the defendant, as stated at the close of their argument upon this branch of the case, viz: "It results that the only purpose which this evidence served was to influence the jury to believe that defendant was of a murderous disposition, and therefore it tended powerfully to affect their conclusion on the question of the intent to murder charged in the indictment." I think that it did have a tendency to show defendant's intent, and, because it had such tendency, the evidence was properly admitted. It is further urged on behalf of appellant, that there is no evidence tending to show a *specific* intent on the part of the defendant to take life.

Where an act becomes criminal only when it has been performed with a particular intent, that intent

must be alleged and proved; but it is for the jury, under all the circumstances of the case, to say whether the intent required by the statute to constitute the offense existed in the mind of the defendant. (*People* v. *Mize*, 80 Cal. 45.) "And if there was evidence tending to prove that the intent was as alleged in the indictment, the verdict will not be set aside on the ground that the evidence is insufficient to sustain the verdict." (*People* v. *Estrada*, 53 Cal. 600; *People* v. *Swalm*, 80 Cal. 46; 13 Am. St. Rep. 96.)

A sane man must be presumed to contemplate and intend the necessary, natural, and probable consequences of his own acts, . . . . but, when the intent is the gist of the crime, this presumption, though a very important circumstance in making the proof necessary upon this point to convict, is not conclusive, nor alone sufficient, and should be supplemented by other testimony to avoid a reasonable doubt." (Rice's Criminal Evidence, 450.)

Officer Warner testified that defendant "seemed to be very nervous and excited, and his face seemed to be drawn in rather a peculiar way. I did not understand his looks when he went around the counter; it was rather peculiar to me; it seemed as if his face was drawn, kind of rigid; rather peculiar, his actions."

The same witness further testified: "He looked as though he meant business some way or other; that is the way he looked to me. I paid no attention to that until after he drew his gun; then I seen that there was trouble."

Sergeant Cota testified that he saw by the way the defendant was acting that he was not going to be taken without trouble, and that as soon as he directed the officers to "take him" that he went for his pistol. The evidence in the transcript is very voluminous, and a large number of witnesses were examined, and it is not necessary to rehearse the evidence in detail bearing upon this point. It is sufficient to say that soon after the defendant shot Kelley, the two officers, Warner and

McInnes, went to the saloon and remained there until the sergeant returned from the hospital. When the officers went to the saloon they asked defendant about the trouble there had been there, or who he had the trouble with, so that he was aware of the purpose of the officers' visit, and had time for reflection and to determine upon the course he would pursue in case they undertook to arrest him. Under these circumstances, the fact that he seized his pistol as soon as the sergeant ordered his arrest, and used it upon the officers, would seem to be evidence tending to show that he intended to kill, and if so, such killing, if McInnes had died, would have been murder. At least there was evidence, aside from the presumption arising from the use of a deadly weapon, tending to prove the intent to murder, and the question of intent having been submitted to the jury as a question of fact, and there being evidence of the character above indicated, we are not at liberty to set aside the verdict upon that ground.

Counsel for appellant comments upon the following instruction given to the jury by the court: "I further charge you that there is no evidence before you that a felony had in fact been committed by the defendant before any attempted arrest by police officers, and whether he committed a felony that night is not material in the case."

It is said by counsel that this instruction does not cure the error arising from the reception of the evidence relating to the assaults upon Kelley and Carrington. I think counsel misconceives the meaning and purpose of this instruction. The arrest was made without a warrant, and in order to justify the officers in thus arresting the defendant they must have had reasonable cause to believe that a felony had been committed; but it was not necessary to prove that a felony had, in fact, been committed. This instruction evidently relates, when read in connection with the other instructions given to the jury, to the assaults made upon Kelley and Carrington as affecting the right of the officers to make

the arrest, and informed the jury that it was immaterial whether it had been committed or not. The language of the first part of the instruction is not apt, but was evidently intended, and we think must have been understood by the jury, to mean, that any evidence relating to the prior assaults upon Kelley and Carrington were not for the purpose of determining the fact whether those assaults were felonious; nor was it necessary to withdraw that evidence from the jury, because, as we have already said, it was properly received, and there was no error upon that point to be corrected.

I think the verdict is justified by the evidence, and find no error which would justify a reversal, and advise that the judgment and order appealed from be affirmed.

BELCHER, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.