[Criminal No. 500.    Filed January 25, 1923.]

[212 Pac. 372.]

## GUS ARGETAKIS, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW — TEST OF HEARSAY WHETHER WITNESSES MAY BE CROSS-EXAMINED CONCERNING FACT. — The ultimate test as to whether a statement is hearsay is whether the witness may be cross-examined concerning the fact about which he testifies.

2. CRIMINAL LAW — EVIDENCE AS TO SOURCES OF INFORMATION UPON WHICH ARREST WAS MADE HELD NOT HEARSAY.—In a prosecution for attempting to cheat by the confidence game, wherein the issue arose as to the authority of the arresting officers to seize property of defendant by means of which it was charged he had attempted to commit the offense, a question of the officer to tell what had been reported to him and from what source, asked in order to discover upon what authority the officer had proceeded, did not call for hearsay evidence, since as to such things the officer was subject to cross-examination; the question being not as to the truth of the information, but whether the officer had reasonable cause to believe his informant, in view of Penal Code of 1913, section 854, relating to arrests by peace officers without warrant.

3. ARREST—EXTENT OF AUTHORITY OF "PEACE OFFICER" TO MAKE ARREST STATED.—By virtue of Penal Code of 1913, section 841, a police officer is a peace officer, and may seek out a person to be arrested wherever he may find him within his jurisdiction, whether within or without doors, and may·exercise the authority given him

Right to search person and habitation of one under arrest for crime, note, 3 Ann. Cas. 354.

Admissibility of evidence secured by search or seizure, notes, 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

by law and in the manner which it is given him to break down any barriers interposed between the officer and person to be arrested, in view of section 862, authorizing a peace officer to break doors or windows.

4. SEARCHES AND SEIZURES — ARRESTING OFFICER MAY SEARCH FOR AND SEIZE INSTRUMENT WITH WHICH CRIME WAS COMMITTED.— Where a person is charged with having committed a felony in attempting to cheat by means of the confidence game, a peace officer in making the arrest may seek for and seize the instrument and means by which the crime charged was attempted to be committed, notwithstanding Constitution, article 2, section 8, providing that no person shall be disturbed in his private affairs, or his home invaded, without authority of law.

5. CRIMINAL LAW — CONSTITUTIONAL PROVISION PROTECTING DEFENDANT FROM GIVING EVIDENCE AGAINST HIMSELF DOES NOT MAKE INADMISSIBLE MEANS BY WHICH CRIME WAS COMMITTED.—Constitution, article 2, section 10, providing that no person shall be compelled in any criminal case to give evidence against himself, does not exempt a person charged with a crime from having used in evidence the instruments and means by which that crime was committed.

6. CRIMINAL LAW — ADMISSIBILITY IN EVIDENCE OF INSTRUMENTS BY WHICH CRIME WAS ATTEMPTED TO BE COMMITTED DEPENDS ON STATE AND NOT FEDERAL LAWS.—Where a peace officer in arresting a person accused of a felony searched defendant's room and seized the instrument by which the offense was attempted to be committed, the admissibility of such instrument in evidence is to be determined by the laws and Constitution of the state, rather than by the provisions of the federal Constitution.

7. CRIMINAL LAW — NO RELIEF ON APPEAL FOR FAILURE TO CHALLENGE JUROR AS HAVING SERVED ON JURY TRYING CODEFENDANT.— Where one accused of a felony failed to exercise his right to challenge a juror as having served upon a former jury which convicted a codefendant, although defendant's counsel had full knowledge of all the facts, no relief can be afforded on appeal, in view of Penal Code of 1913, section 1026, requiring a challenge for cause to be taken before the juror is sworn.

APPEAL from a judgment of the Superior Court of the County of Maricopa. A. G. McAlister, Judge. Affirmed.

Mr. F. C. Struckmeyer and Mr. Clarence E. Johns, for Appellant.

Mr. W. J. Galbraith, Attorney General, and Mr. George R. Hill and Mr. Wm. A. Harkins, Assistant Attorneys General, for the State.

LYMAN, J.—In a joint information, this appellant with one other was charged with an attempt to cheat and defraud by means of a trick or device known as a confidence game, a felony. Both were convicted in separate trials.

Appellant bases his appeal upon five assignments of error, the discussion of which can be more logically developed by taking up first the fifth assignment, which is as follows:

"The court erred in overruling the objection to the following questions: 'Q. Now I want to go into the matter, Chief Brisbois, as to whether at that time such charge had been made upon a reasonable cause? And to that end, I will ask you to tell what had been reported to you, and from what source, and to what extent you had been following the matter up?'

"Mr. Struckmeyer: 'If the court pleases, that certainly is objectionable. It calls for hearsay of the worst kind; in fact the very question is but requesting him to relate hearsay evidence.'

"The Court: 'As I view the matter, Mr. Struckmeyer, that goes to the very essence of the proposition. The objection is overruled; it may be answered.'"

Upon the trial of appellant, his counsel, by cross-examination of witness Brisbois, chief of police of the city of Phoenix, under whose direction appellant was arrested, disclosed that the arrest was made and certain articles taken from appellant's room without warrant of arrest or search-warrant. This cross-examination was followed by a question asked by the county attorney of witness Brisbois, objected to by appellant's counsel, and the overruling of that objection forms the basis of this assignment. The

witness by this question is asked to disclose upon what authority the arrest was made, and the articles sought to be introduced in evidence were taken possession of.

The statutes of Arizona provide that an officer may without warrant make an arrest "on a charge made upon a reasonable cause of the commission of a felony by the party arrested," or "when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

An issue having been raised as to the authority for the arrest and seizure of appellant's property, the county attorney sought to discover upon what authority the officer had proceeded in the premises. Objection to this question is based solely upon the ground that it calls for a hearsay statement. The information upon which a peace officer is authorized to act without a warrant may be acquired either by personal observation or by statements made to him by others. Neither by statute nor by common law was the officer required to act only upon his own observation. In fact, the very terms of the statute, "on a charge made," indicates that the officer is authorized and required to act upon information furnished him by others. The question is not whether the charge made or the information conveyed to the officer was true, but whether or not any charge was made or any information conveyed to the officer, and, if so, what that charge was, and what that information consisted of. The thing to be proved was the information or the charge, and what that information or what that charge was.

The best possible evidence concerning that was the testimony of the officer as to what he had heard and seen, whether what he had heard consisted of spoken words or of anything else. The ultimate test as to

whether or not a statement is hearsay is whether the
witness may be cross-examined concerning the fact
about which he testifies. The question here was
whether the officer had heard, and what he had heard.
As to both those things, he was subject to cross-
examination. He could not be cross-examined as to
the truth of the information received; but that was
not the fact to be proved. The basis of the officer's
authority was not the truth of the charge, but the
fact that the charge was made. It is not that the
person sought to be arrested has committed the
felony that is under consideration; but that the of-
ficer had reasonable cause for believing him to be the
person who committed it. Paragraph 854, Pen. Code
Ariz.; *People* v. *Wilson,* 117 Cal. 688, 49 Pac. 1054;
*Lees* v. *Colgan,* 120 Cal. 262, 40 L. R. A. 355, 52 Pac.
502.

Appellant's first assignment of error is not urged.

Assignments 2 and 3, presenting to some extent
the same questions of law, are discussed together in
appellant's brief, and will be so treated here. These
assignments are as follows:

"Assignment 2. The court erred in denying the
petition for restitution of property.

"Assignment 3. The court erred in overruling the
objection of the appellant made during the course of
the trial, as follows:

"Mr. Struckmeyer: 'Now, if the court pleases, I
desire to object to the witness testifying not merely
to the introduction of the exhibits in evidence and its
use, but I desire to object to the witness testifying of
and concerning anything seized without the necessary
predicate therefore being laid, namely, the obtaining
of a. search and seizure warrant, or the witness testi-
fying to any knowledge concerning the things seized
without a search and seizure warrant, and knowledge
gained by him in the unlawful act, and this, if the
court pleases, I contend is one of the things he is now

interrogated about, now questioned about, knowledge gained by him in the unlawful act.'

"The Court: 'The court overrules the objection'— and erred in receiving in evidence the various exhibits in this case so obtained, and receiving in evidence testimony, the knowledge whereof was gained by unlawful search and seizure."

The record discloses that the police officers of the city of Phoenix who made the arrest of appellant in this case had information that an attempt had been made by appellant to cheat and defraud by the use of a small black box, which he used and exhibited as a means of effecting the crime, a felony. Acting upon this information, the police officers went to the lodgings of appellant, knocked at the outer door, and were admitted by appellant's codefendant, who was immediately placed under arrest. The adjoining room, communicating with this by double doors, and occupied by appellant, was next entered by the officers after knocking and getting no response. Appellant was not found in the room, but shortly after, and during the same visit, he was arrested within the same building, brought into the room, and, along with the black box, which was there found, and some other articles used in connection with it, taken into the custody of the police. The box was found inclosed in a suitcase. Other articles were taken from various pieces of furniture.

Before the trial, appellant applied to the court for the restoration to him of the black box and the other articles taken under the circumstances just recited, upon the ground that the property had been taken from appellant without search-warrant or other authority. This application was denied, and the denial forms the basis of the second assignment of error.

Upon the trial the black box and the other articles used with it were offered in evidence, together with

testimony concerning the place and circumstances of their discovery at the time of the arrest. All this evidence was objected to upon the ground that the articles offered in evidence were the property of appellant, and had been taken from him without search-warrant, or in other lawful manner, and the objection overruled. This ruling is assigned as error numbered 3.

Two questions are suggested by these assignments, considering them together: Did these articles come into the possession of the officers and under the control of the court by unlawful or irregular means, and were they inadmissible in evidence because of being improperly procured or for any other reason?

The arrest was made by police officers of the city of Phoenix, who under the laws of this state are peace officers. Paragraph 841, Pen. Code Ariz. Peace officers are authorized to make arrests without warrant on a charge made upon reasonable cause of the commission of a felony by the party arrested, or when a felony has in fact been committed and the officers have reasonable cause for believing the person arrested to have committed it. Paragraph 862, Pen. Code Ariz.; *Wiley* v. *State,* 19 Ariz. 346, L. R. A. 1918D, 373, 170 Pac. 869; *Miles* v. *Wright,* 22 Ariz. 73, 12 A. L. R. 970, 194 Pac. 88. It appears from the record that such information had been received by the officers as authorized them to make the arrest. The authority to make the arrest without a warrant necessarily included the authority to do any other thing, in connection with the arrest, which a warrant would have given. The statutes in setting forth the bases of authority upon which an officer may make an arrest makes no distinction in the scope and extent of the authority conveyed, or the manner in which the arrest is to be effected. If the officer is authorized

to arrest at all he is authorized to perform that duty in the same manner and with like incidents by whatever form that duty is imposed. Whatever the officer is authorized to do by virtue of a warrant of arrest he is authorized to do on a charge made upon a reasonable cause of the commission of a felony by the party arrested. 1 Bishop's Criminal Procedure, 196.

This brings us to a consideration of the authority and duty of a peace officer under the circumstances disclosed by this record. Undoubtedly his first duty is to seek out the person to be arrested wherever he may find him within his jurisdiction, whether within or without of doors, and to exercise the authority which the law has given him, and in the manner which it is given him to break down any barriers which are interposed between the officer and the person to be arrested. Paragraph 862, Pen. Code Ariz.

There seems to be no explicit question raised by appellant, as to the right of the officer to make the arrest, but it seems to be his contention that he was not authorized to do anything else, or to go any further, nor while making the arrest to search for or seize any property, whatever its nature, without such authority as may be conveyed alone by search-warrant. We know of no rule or statute which so defines the duties of a peace officer in effecting an arrest upon valid authority. The authority of an officer to make an arrest carries with it as an incident of that authority to be exercised in connection therewith, the duty to search the person arrested, and the place where he was found, for the purpose of discovering evidence of the crime for which he was arrested, and, if such evidence is found, to take it into possession.

Justice GAYNOR, of the New York Supreme Court, has this to say on the subject:

"The police have the power, and it is also their duty, to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial. The authorities on this head seem to be few, but only because the thing has seldom if ever been questioned." *Smith* v. *Jerome,* 47 Misc. Rep. 22, 93 N. Y. Supp. 202.

In a more recent case in the same court it is said:

"It has always been permissible for police officers, in performance of their official function, to follow criminals into their hiding places, and to search the latter for evidence to support conviction. As to whether such search and seizure are unreasonable, or should be under warrant, depends upon the circumstances. The purpose must be to aid the administration of justice. . . . It has never been required to procure search-warrants in all cases of entering upon and searching private dwellings or premises. Search-warrants had their origin in cases where the circumstances failed to afford legal justification for summary entry, or where no crime had as yet been committed, or where the paper or property to be seized was in the premises, or possession, of a third party, and in the latter case it was essential that the paper or property be required for the purposes of detecting or punishing crime." *People* v. *Milone,* (Co. Ct.), 195 N. Y. Supp. 488.

The opinion above quoted of Justice GAYNOR is commented upon and approved of in *United States* v. *Wilson* (C. C.), 163 Fed. 343, and in many other cases since decided.

The circumstances under consideration here showed authority to make the arrest; access to appel-

lant's lodgings lawfully obtained, the arrest of appellant in the same building, and in a room used by him in connection with his lodgings, and coincident with the arrest the search of his lodging-room by the officers making the arrest to the extent of opening and taking from a suitcase the black box which had been described to the officers as the means by which the offense in question had been committed, and the opening and taking from drawers or other articles of furniture within the same room of other things used in connection with the same incriminating box. It appears from the record that all of these articles were made, designed, and used for the sole purpose of committing a crime; that they had, and could have, no legitimate use or purpose. They belonged to the same category as burglar's tools, and lottery tickets in jurisdictions where lotteries are unlawful, and other forms of contraband goods to which the rights of private property do not belong.

No case has been cited, and we doubt if any court has ever decided that an officer, lawfully effecting an arrest, and lawfully within the domicile of the person arrested, may not, as an incident thereto, within the limitations observed in this instance, seek for and seize the instruments and means by which the crime charged was committed.

Appellant seems to assume that his goods were taken possession of by the officers unlawfully, and upon that premise bases a conclusion that they should have been returned to him, and not received in evidence, supporting this conclusion by reference to sections 8 and 10 of article 2 of the Constitution of the state of Arizona, which are as follows:

"Sec. 8. No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

"Sec. 10. No person shall be compelled in any criminal case to give evidence against himself. . . ."

As already suggested, it appears from the record that whatever disturbance there was of appellant's private affairs, or whatever invasion there was shown to have been of his home, was done in pursuance of authority directing and empowering the arrest of appellant upon a charge of having committed a felony, and, far from being without authority of law, was done under the express commands of the law. The provision contained in section 10 that "no person shall be compelled in any criminal case to give evidence against himself" does not extend to exempt a person charged with crime from having used in evidence the instruments and means by which that crime was committed.

Reference is also made to amendments 4 and 5 of the Constitution of the United States, and the application of those provisions made by the United States Supreme Court. The admissibility of this testimony must, of course, be determined by the laws and Constitution of this state, rather than by the provisions of the federal Constitution; but, for the purpose of treating the decisions of the federal courts as applicable to the questions involved here, it may be assumed that amendments 4 and 5 of the United States Constitution are substantially like the provisions of the state Constitution bearing on the same subjects.

The case of *Boyd* v. *United States,* 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524 (see, also, Rose's U. S. Notes), upon which appellant seems to rely, had to do with the constitutionality of an act providing for the forcible taking by search-warrant or by subpoena of private papers, for the purpose of effecting a forfeiture of goods, and the court found that such a law was unconstitutional, and that no search-warrant or other process could be lawfully issued for such a purpose. The conclusions arrived at by the

court in that case could throw no possible light upon the widely different conditions involved in this one. It is worthy of note, however, that there is expressly excepted from the effect of the conclusions reached in that case conditions such as we have to deal with here, and the court says:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo*. In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. . . . So, also, the laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within this category."

The case of *Adams* v. *New York,* 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372, relates to facts more nearly parallel to the conditions we are considering here. The question there arose as to the right of the state to introduce certain evidence which it was claimed had been unlawfully obtained. Concerning this the court says:

"In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained. The rule is thus laid down in Greenleaf,

Vol. 1, § 254a: 'It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

That the Supreme Court of the United States has never departed from that opinion appears from a recent case, *Burdeau* v. *McDowell,* 256 U. S. 465, 13 A. L. R. 1159, 65 L. Ed. 1048, 41 Sup. Ct. Rep. 574 (see, also, Rose's U. S. Notes, Supp.), which is the most recent decision reported upon this subject. Certain papers belonging to McDowell had been surreptitiously taken from his office, and afterwards came into the possession of Burdeau, Special Assistant of the Attorney General of the United States. He held the same for the purpose of using them in connection with a criminal prosecution then pending against McDowell, and recovery of the papers was sought upon the ground that the presentation to the grand jury of these books or papers, or any secondary or other evidence secured through or by them, would work a deprivation of petitioner's constitutional rights secured to him by the fourth and fifth amendments to the Constitution of the United States. The court refused to surrender the papers, and as authority for such ruling cites the case above referred to of *Adams* v. *New York.*

Appellant cites the case of *Gouled* v. *United States,* 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261. An examination of the facts of that case will disclose how unrelated that authority is to any question involved here. The evidence offered by the state in that case was rejected upon the ground that officers of the United States, with no charge pending

against Gouled, and engaged merely in a fishing expedition, had invaded the office of Gouled without any pretended authority whatever, had rummaged among his private papers and had carried away the articles sought to be introduced in evidence. This act of the federal representatives the court refused to condone. The right of a peace officer to take the instrument by which the crime charged had been committed from the possession or from the control of the person arrested, as an incident to that arrest, was in no way involved in that case. If we look to the state courts for authority upon this question, it will be found that they have generally disregarded the means by which property was obtained in considering its admissibility in evidence. *State* v. *Madison*, 23 S. D. 584, 122 N. W. 647.

Appellant's fourth assignment of error is based upon the order of the court denying a motion for a new trial because of the disqualification of one of the jurors,. T. A. Province. The disqualification of this juror is stated to have been his service upon the jury which tried the codefendant of appellant, and such service is made to appear in the record by an affidavit made by one of the counsel for appellant upon his trial. The affidavit states categorically that the juror Province served upon both juries, and that, when examined upon his *voir dire* in this case, he stated that he had not served as a juror upon the trial of the codefendant. No challenge was interposed by appellant to the service of this juror, and no cause shown why it was not done.

A sufficient answer to this assignment is that counsel were precluded from further objection by accepting the juror without challenge. The same counsel examined both juries. The same files and records upon which the codefendant was tried lay before counsel when this appellant was upon trial. If the

juror Province served upon the former jury, that fact appeared from the record, and a challenge for cause should have been made upon that showing, and would, of course, have been sustained. No excuse is offered for not making it. Counsel for appellant, having full knowledge of all the facts, and having failed to ask the trial court to apply the remedy which the statute gives, this court is without power to afford relief. Paragraph 1026, Pen. Code Ariz.; *Queenan* v. *Territory of Oklahoma,* 190 U. S. 548, 47 L. Ed. 1175, 23 Sup. Ct. Rep. 762 (see, also, Rose's U. S. Notes).

There will not be found in this opinion any general warrant for peace officers to make unauthorized incursions upon private premises, nor can it be construed as an invitation to lightly disregard those provisions of Constitution and statute by which personal liberty and private property are secured from unwarranted intrusion. The conclusions reached here apply only to such facts as this case discloses, and any generalizations are to be restricted to the facts under consideration, and to cases of like sort.

The judgment of the court is affirmed.

ROSS, J., concurs.

McALISTER, C. J., being disqualified, took no part in the decision of this case.