[Crim. No. 1905.   Third Dist.   Oct. 1, 1945.]

THE PEOPLE, Respondent, v. SAMUEL J. BRADLEY, Appellant.

Lawrence J. Skirving and Archibald M. Mull for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and James O. Reavis, Deputies Attorney General, J. Q. Brown, District Attorney, and Edw. McDonnell, Deputy District Attorney, for Respondent.

PEEK, J.—This is an appeal from a judgment after trial by a jury convicting defendant on four counts of assault on three women, two of said counts being for assault with intent to commit rape and two for "assault with an instrument likely to produce great bodily harm, an offense included within the charge of intent to commit murder," and from the order of the court denying defendant's motion for a new trial. The sole ground for appeal is the alleged insufficiency of the evidence to sustain the verdict and the judgment thereon. Appellant has not assailed the evidence with respect to count 4, and we therefore assume that he does not question the propriety of his conviction of the crime therein charged.

The three counts remaining involve an episode occurring on the evening of July 8, 1944, and extending into the early hours of the following day. Briefly it appears that three sisters, Rachael Chomin, Mildred Nelson and Rosemary Newell were waiting for a bus when the defendant, driving an automobile, stopped and offered to take them home, which offer they accepted. Mildred sat in the front seat with him while Rosemary and Rachael sat in the back. He drove by a devious course to a comparatively lonely spot on the outskirts of North Sacramento, stopped the car, turned to Mildred and put his arm over the back of the seat. In response to her question, "What is the big idea?" he replied, "I will tell you what the big idea is. One of you is going to put out, I don't care which", and,

"Which one is it going to be, make up your minds." The women then started to get out of the car but as they did so defendant stuck a large sized pocket knife against the side of Mildred, threatening to stick the knife into her stomach if any of them moved. The girls entreated him to let them go, and after some argument he did let Rosemary get out of the car. Several times defendant repeated his demands, all of the while holding the knife against Mildred. Rachael found a hammer in the back seat but before she could strike defendant he grabbed it from her, struck her with his fist, climbed into the back seat and stated: "Since you are so smart, I will just take you." He then tried to put his arms around her. Rosemary, who had returned to the car, grabbed him by the leg while Mildred hit him with her purse, and as a result the three of them were able to get defendant out of the car where the scuffle continued, during which defendant hit Rachael with his fist. The defendant finally told the women to walk up the road, which they did. A short distance from the car they began to run. After running about two blocks they heard the car coming behind them, and they turned into a lane leading to a house. Rosemary continued on to the house while Mildred and Rachael climbed through a wire fence into an adjacent field. Defendant drove through the fence, followed them into the field, struck Mildred and ran over her with the car. He then swerved the car quickly toward Rachael but she successfully avoided being hit. Thereupon he turned the car around and drove away.

Defendant's first contention is that the evidence does not support a finding of assault with intent to commit rape on Mildred, the sister who occupied the front seat. His argument is to the effect that no specific intent was shown to rape this girl as distinguished from the others; that no words of rape were used; that if there had been such an intention it was abandoned when he left her side and climbed into the back seat where Rachael was then sitting; that his words and actions were as consistent with robbery as rape; that he did not choose Mildred but actually did choose Rachael. The propriety of the verdict with respect to Rachael is not challenged.

Even assuming that defendant is correct in that no specific intent was shown to rape Mildred as distinguished from the others, his admitted indiscriminate actions toward them all were sufficient to warrant the jury in concluding it was an assault with intent to commit rape on each of them.

(30 C.J. § 168, p. 25; see, also, *People* v. *Torres,* 38 Cal. 141; *Ragar* v. *State,* 180 Ark. 1131 [24 S.W.2d 334]; *People* v. *Raher,* 92 Mich. 165 [52 N.W. 625, 31 Am.St.Rep. 575].)

▇ Nor is there merit in his contention that if there had been such an intention it was abandoned when he left Mildred and climbed into the back seat with Rachael. Such abandonment on his part has "not the slightest tendency to purge him of the legal consequences of his criminal conduct." (*People* v. *Stewart,* 97 Cal. 238, 240 [32 P. 8].) For, as stated in the case last cited, "If an assault with the intent here alleged is made, it is no less a crime, though the aggressor should abandon his intentions before the consummation of the act." (See, also, *People* v. *Jones,* 112 Cal.App. 68 [296 P. 317]; *People* v. *Bowman,* 6 Cal.App. 749 [93 P. 198].) ▇ When he placed the knife against Mildred he definitely committed an assault upon her person, and under the facts of the case, i. e. his statements and his conduct, the jury were entirely within their province in determining that this was an assault with intent to commit rape. "What the assailant meant to do, however, and the manner in which he intended to accomplish his purpose—whether by persuasion, force, or fear—is, as we have said, a question of fact to be determined by the jury; and an appellate court should not disturb their finding simply because conflicting inferences may reasonably be deduced from the evidence." (*People* v. *Norrington,* 55 Cal.App. 103, 110 [202 P. 932].) The intent with which the assault herein charged was committed was exclusively for the jury to determine from all of the circumstances and acts of the defendant. (*People* v. *Mit Singh,* 59 Cal.App. 64 [209 P. 1013].) "It is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground of the insufficiency of the evidence to support it, it must be made clearly to appear that upon no hypothesis whatever is there substantial evidence sufficient to support the conclusion of the trial court." (*People* v. *Tom Woo,* 181 Cal. 315 [184 P. 389].)

▇ As a second ground of attack upon the sufficiency of the evidence to support the verdict and judgment appellant contends that there was not sufficient evidence to identify the automobile used in the commission of the crime with the car admittedly owned by the defendant. A great deal of testi-

mony was introduced on this question. It appears that several weeks after the offense had been committed, defendant, with the help of others, painted his car black. According to his witnesses it theretofore had been brown, chocolate brown, and dark brown. The prosecution witnesses described the color of the car used on the night in question and the paint found on defendant's car after the dark paint had been scraped off, as tan, light tan, brown, light brown, medium brown, sandy, rust and biege. It is to be noted that the jury might well have concluded that one of the complaining witnesses solved the problem in part, when in adhering to former testimony in which she had described the color as a light tan, she explained on cross-examination: "Well, that is the way it looked in the moonlight."

The strength or weakness of the identification of the car and the incompatibility of and discrepancies in the testimony, if any there were, were matters solely for the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. That court having approved the finding of the jury, this court may not disturb such finding unless we can say, as a matter of law, that there is no evidence to support the conviction. (*People* v. *Knight,* 44 Cal.App.2d 887, 891 [113 P.2d 226] ; *People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814] ; *People* v. *Fleming,* 58 Cal.App.2d 37 [136 P.2d 88].)

With respect to appellant's next contention "that he was home when the three women stated he was with them," we likewise are bound by the findings of the jury. "An alibi is not a separate or affirmative defense but merely negatives the proposition required to be proven by the prosecution, that is, that the defendant was personally present at the place when the offense was committed." (*People* v. *Spillard,* 15 Cal.App.2d 649, 652-3 [59 P.2d 887] ; see, also, *People* v. *Krug,* 10 Cal.App.2d 172 [51 P.2d 445] ; *People* v. *Pianezzi,* 42 Cal. App.2d 270 [108 P.2d 685].) It is readily apparent from the record herein, as appellant admits, that a conflict in the evidence exists in this regard. Where such a conflict does exist the question of whether or not a defendant has established his alibi is one of fact, the determination of which, upon conflicting evidence, will not be disturbed on appeal. (*People* v. *Pianezzi, supra; People* v. *Krug, supra.*)

Finally defendant contends that the evidence does not warrant the finding of an intent to run his car over the girl

who escaped injury when her sister was struck while running across the field. This assumption of error again raises purely a question of fact, and although on this particular count the evidence to support a conviction was not as ample as that introduced relative to the other counts, there was sufficient evidence to warrant the jury in finding as it did.

In arriving at its conclusion the jury could consider the character of the means used, the manner of its use and the purpose to be accomplished (*People* v. *Valliere,* 123 Cal. 576 [56 P. 433]); the fact that defendant had previously made threats to commit serious bodily injury upon one of the sisters (*People* v. *Fitzgerald,* 51 Cal.App.2d 518 [125 P.2d 105]); the circumstance that he must have been conscious of having committed upon them the crime of assault with intent to commit rape (*People* v. *Wilson,* 117 Cal. 688 [49 P. 1054]), and the fact that there were no circumstances to negative the inference of an evil motive (*People* v. *Fitzgerald, supra*). The evidence clearly shows that the defendant actually did run over Mildred, and there is ample evidence that he fully intended to run over Rachael. The results of such an assault are not to be confounded with the manner in which it was made. (*Crosby* v. *People,* 137 Ill. 325 [27 N.E. 49].) As was stated in *People* v. *Yslas,* 27 Cal. 630, 631: "In the present case the defendant was guilty of an assault [with intent to commit murder] if he advanced on the prosecutrix in such· a manner as to threaten immediate violence, notwithstanding she succeeded in making her escape without injury."

The courts of this state have stated in numerous opinions that a reviewing court will not attempt to determine the weight of the evidence but will decide whether on the face of all the evidence it cannot be held that therefrom sufficient facts could have been found by the jury to warrant the inference of guilt, and before the verdict of the jury will be set aside it must be made to clearly appear that upon no hypothesis whatever is there any substantial evidence to support the conclusion of the jury. (*People* v. *Pianezzi, supra; People* v. *Perkins,* 8 Cal.2d 502 [66 P.2d 631]; *People* v. *Spady* (1923), 64 Cal.App. 567 [222 P. 191]; *People* v. *Kneiling,* 127 Cal.App. 151 [15 P.2d 561]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

All intendments being in favor of the judgment we must

conclude from the record before us that the judgment and order herein must be affirmed. It is so ordered.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 29, 1945.