Clow Wesley COLBERT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–104.

Court of Criminal Appeals of Oklahoma.

Aug. 5, 1977.

Layden & Layden, Bill Layden, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Clow Wesley Colbert, hereinafter referred to as defendant, was charged in the District Court, Atoka County, Case No. CRF–76–15, with the offense of Assault With Intent to Rape, in violation of 21 O.S.1971, § 681. The case was tried to a jury and a guilty verdict was returned, punishment being assessed at two (2) years' imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness was Dr. Wallace Byrd, who testified that at approximately 7:30 p. m. on the evening of March 14, 1976, he had occasion to treat one Juanita Wilson, the prosecutrix herein, in the emergency room of Mary Hurley Hospital. He testified further that she told him that she thought her left arm was broken. When he inquired of her how it had happened, she stated that it had happened in an attack by a man in an attempt to rape her. Dr. Byrd further testified that he examined Mrs. Wilson and that her arm was greatly deformed and freshly broken. He bandaged her arm, and sent her to Ada, Oklahoma, to a Dr. Ramsey, an orthopedic surgeon. On cross-examination, Dr. Byrd testified that he could not recall finding any bruises on Mrs. Wilson or noticing any disarrangement of her clothing because he was more concerned with Mrs. Wilson's arm and the fact that she was in great pain. He also stated that he did not spend a lot of time examining or questioning her because of the need to quickly send her to an orthopedic surgeon. Finally, he testified that he detected no alcohol on the prosecutrix's breath.

The State's next witness was Juanita Wilson, the complaining witness herein. She testified that she had known the defendant for some 15 to 20 years and had recently been on friendly terms with him and his wife. She testified that on the date in question, March 14, 1976, she met the defendant and his son in town at approximately 3:30 in the afternoon and was asked if she would accompany them to look at some cattle. Along the way, they picked up another man. After stopping several places to look at cattle, they returned the other man to his home. They then proceeded to the defendant's mother-in-law's home. The witness remained in the truck, while the defendant and his son went into the home. After a short time, the defendant came out of the home, angry for some reason unknown to the witness. The defendant and the witness then proceeded to defendant's uncle's home, defendant threatening to get a gun to shoot up his mother-in-law's home. A gun was obtained from the defendant's uncle, and shells were purchased in a store in Stringtown. With the witness driving, the truck then proceeded toward Atoka. Somewhere along the way defendant indicated that the witness should turn on to a country road. The witness complied. After driving some distance, defendant told the witness to stop the truck. The defendant then took the keys from the ignition. The witness asked "what are you doing," defendant replied "I'm going to get me some." The defendant attempted to get the witness to lie down, but she refused and a struggle ensued. The defendant grabbed the witness's hand, forcing her fingers back. The witness testified that she asked the defendant again what he was doing, and that he just kept repeating "I'm going to get me some." Sometime during the course of the struggle, the defendant hit the witness with his fist breaking her arm. The defendant was able to remove one leg of the witness's pants, at which time the witness indicated that the defendant could just go ahead, and that she would not struggle anymore. At this point the defendant stopped, got out of the truck, hit it with his hand, and stated that he would take her to a doctor. He helped her dress, and drove her to a hospital in Coalgate, where she was treated by Dr. Byrd, who then sent her to see an orthopedic surgeon in Ada.

The State rested.

The defendant testified in his own behalf. The defendant testified that he had previously been convicted of Larceny of a Domestic Animal. His testimony was basical-

ly similar to that of Mrs. Wilson up to the point of the struggle, but he disagreed with some of the events of the early afternoon as testified to by Mrs. Wilson. The defendant further testified that he and the complaining witness, Mrs. Wilson, were headed back to Atoka on Highway No. 69, and that she was driving; that she turned off on a country road to use the bathroom and that she stopped on the country road and got out of the pickup truck on the driver's side and went to the back of the pickup. At this point, defendant testified that he heard a "little bumping around in the back of the pickup," and that he looked around because, according to his testimony, Mrs. Wilson had previously had problems with blackout spells, and he thought she was having an attack. He further testified that a little later she got back into the truck and told him that he had hurt her arm and asked him if he had any insurance. The defendant replied that he had none. She then asked him to take her to the hospital, and the defendant replied that he would. The defendant further denied struggling with Mrs. Wilson or hitting her.

Mrs. Wilson was then recalled by the State. She denied having blackout spells, although she admitted having a nervous breakdown at one time. She also denied that she pressed charges in order to collect money, or insurance proceeds.

█ The defendant presents two assignments of error on appeal, both of which assert that the trial court erred in failing to sustain defendant's demurrer to the evidence. First, the defendant contends that this was error because the prosecutrix's testimony was not sufficiently corroborated. He urges that corroboration is necessary because the testimony of the prosecuting witness is contradictory, inconsistent and unreasonable. This contention is without merit. It cannot be expected that months after the occurrence of an incident, a person involved therein would remember exact details of the sequence of events. It is enough that the testimony is not inherently unreliable or contradictory. We are of the opinion that her testimony was clear and

convincing, and thus no corroboration was needed. See, *Harvey v. State*, Okl.Cr., 485 P.2d 251 (1971).

█ The defendant next contends that the State failed to prove that the defendant had the necessary specific intent to rape, and that his demurrer therefor should have been sustained. This contention is likewise without merit. The prosecutrix testified that the defendant repeatedly said "I'm going to get me some." She further testified that although defendant did not directly fondle her private parts, he did struggle with her, attempt to force her to lie down on the seat, and succeeded in partly removing her pants and undergarments. And, while it is true that the defendant's intent must be to have intercourse with the prosecutrix in spite of any resistance she might make, *Cape v. State*, 61 Okl.Cr. 173, 66 P.2d 959 (1937), and that mere licentious conduct, or even violent familiarity is not enough, it is also true that intent is a question of fact for the jury, whose decision we will not disturb when it is based upon competent evidence. Further, the fact that the defendant stopped short of actually having intercourse with the prosecutrix is of no consequence because the act of assault with intent to rape was completed at the moment defendant first laid hands on the victim with intent to rape. See, *People v. Bradley*, 71 Cal.App.2d 114, 162 P.2d 38 (1945). In *Privitt v. State*, Okl.Cr., 336 P.2d 925 (1959), in Syllabus No. 3, this Court stated:

"On a charge of assault with intent to rape, what the assailant meant to do, and the manner in which he intended to accomplish his purpose, whether by persuasion, force, or fear, is a question of fact to be determined by the jury; and an appellate court should not disturb their finding simply because conflicting inferences may reasonably be deduced from the evidence."

In the instant case the testimony of the prosecuting witness concerning statements made by the defendant and her testimony relating to the manner in which the assault was committed amply support the jury's

conclusion that the defendant did commit the assault with intent to rape.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, J., concurs.