[Crim. No. 1486.  In Bank.—February 23, 1909.]

# THE PEOPLE, Respondent, v. CLEVELAND MOORE, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT RAPE—SUFFICIENCY OF EVIDENCE—CONFLICT—REVIEW UPON APPEAL.—Upon appeal from a judgment upon conviction of an. assault with intent to commit rape and from an order denying a new trial, when there is a sharp conflict in the evidence as to the character and circumstances of the assault, and especially between the testimony of the prosecuting witness and that of the defendant, each of whom is to some extent corroborated by witnesses apparently disinterested and wholly unimpeached, this court must accept as proven the facts as detailed by the witnesses for the state.

ID.—INTENT A QUESTION OF FACT FOR JURY.—The intent with which an assault is committed is a fact to be inferred- from the outward act and surrounding circumstances, and is a question of fact for the jury and not of law for the court, except in a case where the facts proved afford no reasonable ground for the inference drawn.

ID.—RULE AS TO UNCORROBORATED PROSECUTRIX AND INCONSISTENT PROOF INAPPLICABLE.—The rule applied in cases where the testimony of the prosecuting witness is wholly uncorroborated, and when circumstances inconsistent with her testimony are clearly proved, cannot apply to the case appearing upon this record, when the assault and its brutal and indecent character must be considered established and the only question is as to what the defendant intended.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial.  H. M. Albery, Judge.

The facts are stated in the opinion of the court.

I. G. Zumwalt, and Ernest Weyand, for Appellant.

U. S. Webb, Attorney-General, Seth Millington, District Attorney, and J. Charles Jones, for Respondent.

BEATTY, C. J.—The defendant was convicted of an assault with intent to commit rape.  His appeal from the judgment, and from an order denying his motion for a new trial presents the single question whether there was credible evidence of any facts which would warrant the inference that the de-

fendant was actuated in what he did by the alleged felonious intent. The justices of the district court of appeal, having been unable to agree upon this point, it remains to be decided here.

There is a sharp conflict in the evidence as to the character and circumstances of the assault, and especially between the testimony of the prosecuting witness and that of the defendant—each of whom is to some extent corroborated by witnesses apparently disinterested and wholly unimpeached. But, since our appellate jurisdiction extends only to questions of law, we must accept as proven the facts as detailed by the witnesses for the state.

The prosecuting witness was a girl sixteen years of age, a member of a vaudeville troupe which had been performing at various points in the interior, and was at the time of the assault giving a series of performances at the town of Arbuckle in Colusa County. She, her father and mother, and other members of the troupe, were housed in a traveling car which stood on a siding near the railway depot. Opposite, and facing the depot, at a distance of about one hundred and fifty feet, stood the Hotel Ash—separated from the street by a sidewalk ten feet in width. Connecting the street and side walk in front of the hotel was a bridge across the gutter seven or eight feet long—called in the evidence a "runway." The defendant was in charge of a bootblack stand on the sidewalk near this runway. At twenty minutes to 6 P. M., on the twenty-first day of December, 1907, when one of defendant's customers had just left the stand and was not more than eighty feet distant, the prosecuting witness, returning to her car with some parcels she had been purchasing in the town, encountered the defendant just as she was turning from the sidewalk to the runway for the purpose of crossing the street. At that hour of the shortest day of the year it was, of course, quite dark in the absence of artificial light, but the sidewalk in front of the hotel and the runway were lit up by the lamps burning in the office of the hotel and shining through its glass front, so that persons passing could be readily recognized by their acquaintances. As to these general facts there is no conflict in the evidence. The testimony of the prosecuting witness was that when she was about twenty feet from the runway, defendant called out "hello" to her. She did not answer,

and as she turned to the runway he said "hello" again. She kept on and he again said "hello" and touched her arm. She went a little farther, and becoming frightened, turned back for the purpose of putting herself under the protection of a member of her troupe whom she had parted with at the place where she had made her purchases. Meeting the defendant on the sidewalk she asked him: "Who are you talking to?" He said, "Well you, you damned little amateur." Then he caught her by the arm and when she tried to get away he struck her more than once and she fell on the runway. He held her down with his face close to hers. She tried to scream, but at first could not command her voice. He put his hand under her clothes and tore her drawers, then she screamed, and he struck her again and said, "You damned little bitch." Then again he put his hand under her clothes and hurt her by scratching the inside of her thighs, then she screamed again, and again he struck her and used other language which she was unwilling to repeat on the witness stand. Then people came and he left her. Her cross-examination did not shake her direct testimony, and she was corroborated by a physician and by the woman who had charge of her wardrobe as to the scratches on her thighs and the marks of the blows about her head, and by the latter as to the torn condition of her under-clothing. Three men who were in the hotel and were attracted by her screams found her lying on the runway and the defendant stooping over her and in the act of rising. She was dazed and sobbing. When she was raised to her feet she merely said that the defendant had struck her and called her names.

The defendant's version of the affair is that when he saw the prosecuting witness approaching the "runway" where he was picking up some tacks, he mistook her for a girl of his acquaintance, and said "hello" to her only for that reason, that when he called to her a second time she turned on him and angrily demanded to know what business he had speaking to her, at the same time slapping him in the face. He caught her by the arm and she commenced screaming and struggling, slipping from his grasp and falling on the runway. He was just in the act of stooping to lift her up when the parties in the hotel came out and saw him in that attitude. Three witnesses testified that they were on the sidewalk near enough to see and hear all that passed. Their testimony is

corroborative of the defendant's in most particulars, but not more strongly or directly so than the testimony of the doctor and attendant of the prosecuting witness in corroboration of her testimony as to the scratches on her thighs and the bruises on her head, and her torn underclothing. We are therefore bound to assume that the jury and the judge of the superior court must have disbelieved the defendant and his witnesses, and evidence which they rejected cannot be considered here. We attach no importance to the negative fact that the prosecuting witness did not at the time she was raised from the ground refer to the indecent handling of her person to which she testified at the trial, or to her failure to accuse defendant then of attempting to outrage her. She was surrounded by strange men, and natural modesty would have restrained any innocent girl from entering into such details under such circumstances. She was, moreover, according to the evidence, in a dazed condition, and it is still a question what the purpose of the defendant really was. In all such cases the intent with which an assault is committed is a fact which can only be inferred from the outward act and the surrounding circumstances. It is, in other words, a question of fact for the jury, and not a question of law for the court, except in a case where the facts proven afford no reasonable ground for the inference drawn.

We are cited to a number of cases decided in this court in which verdicts have been set aside upon the ground that the evidence was insufficient to sustain the charge of rape or assault with intent to commit rape. The case of *People* v. *Benson,* 6 Cal. 221, [65 Am. Dec. 506], however, in which there was a conviction of rape, does not appear to have been decided upon the question of fact but upon a question of law—the exclusion of proper evidence offered by the defendant—and the remarks of the court as to the untrustworthy character of the evidence of the prosecuting witness in view of the surrounding circumstances, however just they may have been, were not the ground of the decision. In several subsequent cases the language of that part of the opinion in the Benson case in which the weakness and inconsistency of the evidence is commented upon has been adopted as a ground of decision. But they were all cases in which the prosecuting witness was uncorroborated as to the assault, and where circumstances in-

consistent with her testimony were clearly proven. (*People* v. *Hamilton*, 46 Cal. 540; *People* v. *Adaga*, 51 Cal. 372; *People* v. *Castro*, 60 Cal. 118; *Lind* v. *Closs*, 88 Cal. 13, [25 Pac. 972].) The principle underlying those decisions is that a charge so easily fabricated should not be sustained upon the sole testimony of the prosecutrix where it is not only uncorroborated, but is contradicted by the surrounding circumstances. It has no application to a case like this in which all the outward facts are clearly established, and the only question is what the defendant intended. Here there can be no question, so far as this court is concerned, of the fact of the assault or of its brutal and indecent character. The case of *People* v. *Fleming*, 94 Cal. 308, [29 Pac. 647], is more nearly, but not precisely, in point. There the desire of the defendant to have connection with the prosecutrix was not in doubt, and he did commit a technical assault, but the circumstances clearly showed that he did not intend to accomplish his purpose by force. He was not interrupted and he voluntarily refrained from using his superior strength. Here the assault was forcible and brutal to a degree, and there is every reason to believe that the defendant would have carried out his purpose, whatever it was, in spite of any resistance which the prosecutrix could have made. The sole question is what was his purpose. As to this, counsel for defendant contend with great earnestness and force that it is impossible to believe that any man in his senses could have entertained the thought of committing a rape at that time and place. It must be confessed that such a purpose, harbored under such circumstances would seem incredible, but such an assault under such circumstances would have seemed equally incredible if it had not been proven to the satisfaction of the jury and the trial judge. A court of review, having jurisdiction of questions of law alone, cannot disregard findings of fact supported by direct evidence strongly corroborated by disinterested and unimpeached witnesses—and neither can it be said as a legal conclusion that the facts so found are insufficient to warrant the inference as to the felonious intent.

The judgment and order of the superior court are affirmed.

Henshaw, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.