[Crim. No. 489.   Third Appellate District.—June 18, 1920.]

THE PEOPLE, Respondent, v. RICHARD PORTER,
Appellant.

[1] CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT RAPE—VERDICT
—SUFFICIENCY OF EVIDENCE—APPEAL.—Where the testimony of
the prosecutrix, a girl of the age of about eleven years, in a
prosecution for assault with intent to commit rape, contains some
evidence of every element of the crime, and it is not an irra-
tional conclusion from the evidence in the case that the defendant
is guilty as charged, the judgment of conviction will not be re-
versed on appeal on the ground of insufficiency of evidence to sup-
port the verdict.

[2] ID.—COMPLAINT BY PROSECUTRIX—EVIDENCE ADMISSIBLE.—In a
prosecution for assault with intent to commit rape, it is proper
to permit a witness for the prosecution to testify that, shortly

after the alleged occurrence, the prosecutrix made complaint to her, but such witness should not be permitted to go into the details of the affair.

[3] Id. — Motive Influencing Witness — Objectionable Question — Harmless Error.—In such a prosecution, while the question, "Can you tell this jury here why they [the prosecutrix and her mother] told that story?" asked of the defendant on cross-examination, is objectionable in form, the error in overruling defendant's objection thereto is not of sufficient gravity to justify a reversal of the judgment, particularly where, after the trial court, in overruling the objection thereto, gave his interpretation of the meaning of the question, the defendant expressed himself not averse to a question of that character, and his whole testimony showed that he did not know of any improper motive which might have influenced said witnesses.

[4] Id. — Statements by Prosecutrix to Defendant — Evidence — Foundation For.—In such prosecution, the complaining witness having testified that at a given hour in the morning she and the defendant were in the hall of the rooming-house conducted by her mother and that he was the only man with whom she conversed, the trial court did not commit error in permitting a witness for the prosecution to testify that at about that hour, while occupying a room in such lodging-house, she heard the prosecutrix say: "I am going to tell mamma," notwithstanding it was not shown by that witness that the remark was made to the defendant or that he was present at the time.

APPEAL from a judgment of the Superior Court of Yuba County, and from an order denying a new trial. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and W. P. Rich for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—The defendant was convicted of an assault with intent to commit rape, the prosecutrix being of the age of eleven years. The appeal is from the judgment and an order denying the motion for a new trial.

The first claim made by appellant is that the evidence is insufficient to support the verdict of the jury. With this contention we cannot agree. The mother of the prosecutrix

conducted a rooming-house in the city of Marysville, wherein
she resided with her four children. About the 9th of May,
1919, the defendant became a roomer therein and remained
continuously for a short time and afterward was there at
irregular intervals for a night or two. On the 20th of
August, about 8 o'clock in the morning, he returned to the
lodging-house for the purpose of getting some laundry that
he had left there. He met and talked with the mother who,
in addition to her duties in connection with the lodging-
house, was also working in the Marysville Steam Laundry.
He asked to see the children, and particularly Elsie, the
eldest one. The mother said the children were in bed and
he could not see them then, but must wait until some other
time. He insisted upon seeing Elsie, the eldest child, but
upon being again informed by her that the children were in
bed and he could not see them at that time, he took his
laundry and accompanied the mother down the stairs to the
sidewalk and thence toward the laundry until he came to
the telephone station where he parted with the mother, stat-
ing that he was going to telephone. A short time there-
after he left the telephone station and returned to the
lodging-house. As to what occurred then we have the tes-
timony of the little girl, Elsie, which it is sufficient to quote
as follows: "About ten minutes after Mr. Porter and my
mother left he returned and knocked at the door and said
he wanted to come in. I told him he couldn't come in. He
said, 'Well, get dressed,' and so I got up and got my clothes
and came out, and went out on the porch. He said, 'I hear
your mother is going to send you to Grass Valley.' I said,
'Yes, she is thinking of sending us there'; he said, 'I will
come up and get you out.' I said, 'You can't get us out';
he said, 'Yes, I can, I know one of the Sisters up there';
I said, 'Do you know the Sister Superior?' He said, 'No';
I said, 'You can't get us out unless you know Sister Su-
perior'; he didn't say anything more about Grass Valley;
then we went in the hall and sat down; he wanted me to
sit on his lap, and I said, 'No, I can sit here.' I sat down
on a bundle of laundry in front of the telephone. There
were two bundles of laundry there and so I sat down. He
wanted me to kiss him and I wouldn't do it. He said he
guessed he would have to go; he picked up his laundry and

started down the stairs. I started back to the kitchen, he followed me there; he chased me in the corner and started to unbutton his pants. I pushed away from him and ran over to the other side of the room; he came right after me and sat down in the chair by the table, tried to pull me over his lap; just then my sister came out of room 1; he jumped up and ran over to the other side of the house, then he said he guessed he would have to go; he gave me a dollar. I showed him mamma's new dress, then he said he guessed he would have to go and wanted me to kiss him and I wouldn't do it, so he gave me a dollar and said he would give me five dollars next time he came in. At the time he started to unbutton his clothes he chased me over in the corner, he started to unbutton his pants. I said, 'You let me out'; he said, 'I won't hurt you.' At the time he came over and sat down in a chair and wanted me to sit on his lap his clothes were buttoned. At the time he was sitting on the chair by the table he had hold of my bloomer leg, just had hold of my bloomer at the bottom. He was then trying to pull me over on his lap. Before I started back to the kitchen, he got hold of my arm and tried to pull me in room 6 and I said I would tell mamma and he said 'Oh, no.' ''

[1] We cannot say that it is an irrational conclusion from the foregoing that the defendant is guilty as charged. In the testimony of the girl is found at least some evidence of every element of the crime. We must accord, of course, full credit to her statements, and, so reviewing the record, we must hold that the case is governed by the principle announced in *People* v. *Johnson,* 131 Cal. 511, [63 Pac. 842], and *People* v. *Moore,* 155 Cal. 241, [100 Pac. 688].

Indeed, the situation is fairly disclosed in the following statement of the trial judge in denying the motion for a new trial: "I am bound by the verdict of the jury, and in that respect at this time I am almost in the same position an appellate court would be, looking at the evidence, if there is evidence there, even though it may be conflicting, that would support the verdict, I am to be bound by that verdict unless I think there has been a miscarriage of justice. The incriminating circumstances of this case it is not necessary to comment on, but they are these: He knew the children were there alone, unprotected, he had been told by the

mother he couldn't see them at that time, goes away with her, and then immediately returns, has no business to go up there at all. Then according to his own story corroborates every detail of the girl's story except the incriminating circumstances of unbuttoning his pants and trying to force her into the room 6 with moderate force. He followed her into the kitchen for the purpose of hearing her read a letter; the jury may have wondered why the mail carrier was not produced who delivered that letter; the testimony that he forced her into a corner of the room, unbuttoned his pantaloons, afterward seizing her by the bloomers, those circumstances were sufficiently incriminating to justify the jury in finding a verdict of guilty of assault—of the crime charged. There are no atrocious details to indicate that he ever had in his mind to use more than moderate force, perhaps overcome resistance by blandishments than any other way, but there was sufficient to indicate his purpose to gratify his passions; I think there is no escape from it.''

[2] Appellant claims that the court erred in overruling his objection to the following question: ''I will ask you, Mrs. Simmons, if, on the twentieth day of August, 1919, in the morning about the hour of 8 o'clock, if Elsie made any reference to the defendant—made any complaint to you with reference to Richard Porter?'' In *People* v. *Wilmot*, 139 Cal. 103, [72 Pac. 838], the supreme court said: ''The rule enunciated by the authorities generally, and by all the decisions in this state, is in all cases to admit evidence of the *fact of complaint,* and in no case to admit anything more . . . for as said by Greenleaf, 'the evidence when restricted to this extent is not hearsay, but in the strictest sense original evidence. When, however, these limits are exceeded, it becomes hearsay in a very objectionable form.' It is clear that to allow any mere statement of the prosecutrix as to the details of the affair, or as to the name of the person accused by her, to be given in evidence would be to allow hearsay evidence to prove the offense.'' It is thus apparent that the only possible objectionable portion of the question was in the use of the name of the defendant. The district attorney so framed the question probably to identify the complaint,—in other words, to show ''that the complaint related to the matter being inquired into, and not to a com-

plaint wholly foreign to the subject.'' (*People* v. *Swist,*
136 Cal. 520, [69 Pac. 223].) Manifestly, the question would
have been meaningless if it had not been directed to this
particular instance, but it would have been better if the dis-
trict attorney had otherwise identified the complaint and
avoided the use of said name. It may be added that the
learned trial judge correctly stated the rule as follows: ''You
are prevented from going into detail. . . . It may be given in
evidence that the complaining witness, shortly after the
alleged occurrence, made complaint to some person if that
is the fact.'' But appellant's counsel failed to point out
that specific infirmity in the question. The objection was:
''To which we object as incompetent, immaterial, irrelevant,
calls for hearsay testimony, no foundation laid, it is in-
definite and uncertain, and particularly we specify the in-
definiteness and uncertainty of the question.'' There was no
suggestion that the question contained too much. Indeed,
the principal objection was that it contained too little, that
it was too indefinite and too uncertain. A similar objection
had been made before, but there was no claim that the ques-
tion went too far. This particular objection was therefore
waived. We may add that since it was proper to identify
the complaint in some manner, it is difficult to see any
prejudice in the use of the name of the defendant for that
purpose.

There is no kind of pretense that the prosecutrix had any
cause for complaint against anyone else arising that day,
and if the question had been the entirely proper one, ''Did
Elsie on August 20, 1919, make any complaint as to the
treatment she received that morning?'' the jury would
naturally and inevitably understand that the reference was
to the treatment of her by the defendant. The significance of
the interrogatory was indeed not substantially affected by
the use of the defendant's name.

[3] Another criticism of appellant is based upon this
part of the record: ''Q. Now, Mr. Porter, you state that
your relations with this family have always been friendly?
A. They have. Q. When did they become otherwise? Mr.
Carlin: Objected to as incompetent, immaterial, irrelevant,
not cross-examination, that is an inference to be drawn by
the jury to be argued by counsel, and the reasons for it, too.

The Court: Overruled. A. I don't know as they ever did . . . Mr. Manwell: Can you tell this jury here why they [the prosecutrix and her mother] told that story?'' This question was also objected to, but the court overruled the objection, stating ''he has testified the relationship was pleasant and the question is cross-examination along that line, if he knows any reason why they should have any feeling to testify against him,. that is what it amounts to. Mr. Carlin: To such a question I might not object. The Court: That is what I take the question means.'' The answer was: ''No, I couldn't tell why they told it; I am no mind-reader.''

The question in form was objectionable. But we think it must be assumed that the witness accepted the court's interpretation of its meaning and answered accordingly. In other words, the question must have been understood as though the witness had been asked if he knew of any animus or prejudice on the part of said witnesses that might influence their testimony. Appellant, indeed, expressed himself as not averse to a question of that character. Moreover, regardless of this question and answer, it is quite apparent from the testimony of appellant that he knew of no reason why these witnesses should perjure themselves. If he had known of any fact tending to discredit their testimony, of course, he would have mentioned it. Indeed, his testimony uniformly was to the effect that he was upon terms of friendship and intimacy with the whole family of which the prosecutrix was a member. The answer to the question was then simply the conclusion or inference which the jury must necessarily have reached from a consideration of the other testimony of the defendant; that is, that he did not know of any improper motive which might have influenced said witnesses. The question should have been reframed in accordance with the suggestion of the court, but, even if we concede error, we do not think the matter is of sufficient gravity to justify a reversal of the judgment.

[4] Appellant also criticises the action of the court in allowing Mrs. Simmons to testify that about 8 o'clock in the morning of the alleged assault, while occupying a room in said lodging-house, she heard the prosecutrix say: ''I am going to tell mamma.'' An objection was made to the question upon the general ground, and that it was hearsay, and particularly that no foundation had been laid in that it did

not appear that the remark was made to the defendant or that he was present at the time. Of course, the theory of the prosecution was that the witness heard the remark that was made by the prosecutrix at the time of the alleged assault, and that the testimony as to such declaration was admissible as evidence of the *res gestae.* (*People* v. *Vernon,* 35 Cal. 51, [95 Am. Dec. 49].) The rule is familiar and would undoubtedly apply if the identification of the statement was sufficient. This seems to be the gravest question in the case. The witness heard a man's voice, but she did not recognize it as that of the defendant, since she was not familiar with his voice, nor did she see him on that occasion. But it was not required that the whole question of identification should be established by the testimony of this witness. It appears from the testimony of the prosecutrix that she and the defendant were in the hall at or about that time and that he was the only man with whom she conversed. The jury were entirely justified, from all the circumstances in the case, in concluding that said statement was a part of the conversation with defendant as related by the prosecutrix, and, hence, we think, the court committed no error in admitting the testimony. At any rate, it cannot be said that the verdict was influenced at all by said testimony. The jury must have reached their conclusion from a consideration of the testimony of the prosecutrix, and this, as we have seen, is sufficient to establish the crime. No other point demands attention.

The learned counsel for appellant have presented an able and plausible argument in favor of their client, but after a careful reading of the record, we think it must be said that to reverse the case would be to exceed the limits prescribed for the exercise of the power and authority of a reviewing court.

The judgment and order are affirmed.

Nicol, P. J., *pro tem.,* and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1920.

Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.