[Crim. No. 41. Fourth Appellate District.—February 19, 1931.]

THE PEOPLE, Respondent, v. SIMON JONES, Appellant.

C. L. Foster and C. W. Benshoof for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was convicted by a jury of assault with intent to commit rape, and from the judgment which followed this appeal is taken.

At 8:30 P. M. on the evening of September 11, 1930, Miss C. E. Ruttinger left a prayer meeting in Riverside, California, and after· walking three or four blocks to her home, stopped to do some watering in and about her garden before she entered the house. During the time she was watering she went into the house for the purpose of making a telephone call, and at that time turned on a dome light in the hallway of the second story of her home. Leaving this light burning, she returned to her watering, and at 9:15 again entered the house. She went into a kitchen on the second floor, where she turned on a light, lit the gas and put on a teakettle. She then passed along the hallway, where the light had been left burning, and as she arrived at the doorway to her bedroom she saw a man standing just inside the door. She asked him what he was doing in her house; he did not reply but reached forward, caught her by the throat and threw her on a bed in the room. She fought as much as she could, and tried to scream but could make very little noise as he held his hand over her mouth. Her glasses were broken and her lips and arms were scratched and cut. She testified that her assailant kept moving his hands, which resulted in getting blood all over her clothes. She tried to pull his hands away and tore a number of buttons from his shirt. He held one of her legs down with his knee or leg. She got her other knee up and was kicking him when he got one knee into her stomach and crushed her so she could not breathe, and at that point he let go of her and ran. She got up and tried to turn the light on, but found that the globe had been unscrewed in its socket so that it would not light. She then went out on a balcony and shouted for help, her shouts bringing a

number of the neighbors. A man's coat was later found at the foot of the bed in the bedroom.

 The appellant first contends that the evidence is not sufficient to show that this assailant was a man. The prosecuting witness testified a number of times that it was a man who attacked her; that she did not see his face because of the darkness, but that he had on a white shirt unbuttoned at the throat, and dark trousers, and that his neck and arms were brown. Mr. and Mrs. Herrick, who live about 200 feet from Miss Ruttinger's home, testified that they heard her scream for help while they were standing in the front yard of their home. Just after they heard these screams they saw a man running rapidly away from the position of Miss Ruttinger's house, and as he ran up the street he passed within a few feet of them. They testified that he had on dark trousers, and a white or light shirt which was torn, loose, and hanging outside of his trousers. This evidence, with the presence of the defendant in the courtroom, and the other evidence identifying him as the assailant, is sufficient to sustain the finding of the jury in this regard.

It is next urged that the evidence is not sufficient to establish the identity of the appellant as the assailant in question. The Herricks, in addition to their testimony above referred to, testified that through the aid of a near-by street light they took a good look at the running man as he passed, and while they were unwilling to swear positively that the defendant was the same man, they both stated that they were almost positive of this fact. Some torn and bloody underwear was found at appellant's residence which he admitted was his. A light shirt, torn and bloody, and which he admitted to be his, was found in his landlady's washing. Appellant's trousers matched the coat found in the bedroom. While he admitted ownership of the coat, and professed ignorance of how it got in the bedroom, his explanation of how he lost it is little short of ridiculous. A railing on the porch of Miss Ruttinger's home had been newly painted that afternoon, and in the fresh paint were found imprints of a man's fingers. The appellant's fingerprints were taken by the officers and an enlargement of these, together with an enlargement of the finger-prints on the porch railing, were introduced in evidence, and an

expert along that line testified that the finger-prints on the porch railing were those of the appellant. The finding of the jury that the appellant was the assailant, is amply sustained by the evidence.

In connection with the finger-prints referred to, appellant urges that the evidence of his finger-prints was improperly admitted, being in violation of the provisions of the Constitution of the state of California and the Constitution of the United States, to the effect that no person shall be compelled, in a criminal case, to be a witness against himself. It is his theory that a defendant can no more be compelled to submit his body for examination to secure evidence against him, than he can be compelled to submit his mental faculties to such an examination, and that finger-prints are therefore in the same category as oral testimony. There is no evidence that appellant's finger-prints were taken by force, or that he made any objection to the taking of the same. Objection is not here made to the taking of such finger-prints, but to their introduction in evidence. Appellant relies upon the case of *People* v. *Hevern,* 127 Misc. Rep. 141 [215 N. Y. Supp. 412]. In that case the court was passing upon the constitutionality of a law which required the taking of the finger-prints of an arrested person before admitting such person to bail. In *People* v. *Sallow,* 100 Misc. Rep. 447 [165 N. Y. Supp. 915, 924], the question of the admissibility of the finger-prints of a defendant, as evidence in a criminal case, is fully and ably discussed. A number of quotations from his decision follow:

"It has always, at common law and in the practice prevailing under the constitution and laws of our state, been permissible to put in evidence for the purpose of identification of the defendant, testimony as to his personal appearance, his hair, his eyes, his complexion, marks, scars, teeth, his hands and the like. Finger prints are but the tracings of physical characteristics or the lines upon the fingers."

. . . . . . . . . . . . .

"No volition—that is no act of willing—on the part of the mind of the defendant is required. Finger prints of an unconscious person or even of a dead person are as accurate as are those of the living. . . . By the requirement that the defendant's finger prints be taken there is no danger that the defendant will be required to give false

testimony. The witness does not testify; the physical facts speak for themselves; no fears, no hopes, no will of the prisoner to falsify or to exaggerate could produce or create a resemblance of her finger prints or change them in one line and therefore there is no danger of error being committed or untruth told. The taking of finger prints is not a violation of the spirit or purpose of the constitutional inhibition.''

* * * * * * * * * * * * *

''The admission in evidence of the fact that certain conditions exist, which fact has been ascertained by a reasonable examination of the defendant, that requires no torture for its ascertainment and no act of violation on the part of the defendant, is not a violation of the defendant's constitutional privilege.''

* * * * * * * * * * * * *

''The proof was not the defendant's proof. She was not called as a witness. It was proof by a competent witness, based upon the record of this examination of the defendant. The constitutional inhibition, in my opinion, has reference to testimonial utterances by the defendant, and may not be used to prevent the establishment of the truth as to the existence or nonexistence of certain marks of identity upon the defendant's fingers.''

While our attention has been called to no California cases upon this point, the introduction of such evidence is supported, not only by long established usage, but, in our opinion, by the better reasoning. As pointed out in the case just referred to, such evidence is not the evidence of the defendant, but is the evidence of a competent witness, and while it is based upon an examination of the defendant, it is no more inadmissible than would be the testimony of one who testified to the existence of a scar.

Appellant's principal contention is that the evidence is not sufficient to justify the jury in finding that the assailant of Miss Ruttinger intended to commit rape upon her. It is argued that there is no evidence to indicate that the assailant in this case had any intent other than to escape, and that the evidence shows that he fled as soon as he could release himself from the hold of the prosecuting witness. Reliance is placed upon such cases as *People* v. *Moore,* 155 Cal. 237 [100 Pac. 688, 690] , *People* v. *Flem-*

*ing,* 94 Cal. 308 [29 Pac. 647], and *People* v. *Norrington,*
55 Cal. App. 103 [202 Pac. 932]. Without reviewing all of
the cases cited, these cases and others like them, considered
most favorably to this appellant, merely hold that where the
evidence tends to show that a defendant did not intend to
use the requisite force to accomplish his purpose, but where
it rather shows that he did not at any time intend to use
such a degree of force, the evidence is not sufficient to sus-
tain a conviction. For example, in the case of *People* v.
*Fleming, supra,* which is especially relied upon by appel-
lant, the court remarks that the evidence in that case pre-
ponderated to the effect that the accused depended for
success in his efforts upon his own solicitations and blandish-
ments, and further says that it appeared from the evidence
that physical force was not an element in the defendant's
mind in attempting to carry out his intention. In *People*
v. *Moore, supra,* in discussing cases of this kind where ver-
dicts have been set aside upon the ground of the insuffi-
ciency of the evidence upon the point in question, the court
says: "The principle underlying these decisions is that a
charge so easily fabricated should not be sustained upon the
sole testimony of the prosecutrix where it is not only uncor-
roborated, but is contradicted by the surrounding circum-
stances. It has no application to a case like this in which
all the outward facts are clearly established, and the only
question is what the defendant intended." In the same
case the court also said: "In all such cases the intent with
which an assault is committed is a fact which can only be
inferred from the outward act and the surrounding circum-
stances. It is, in other words, a question of fact for the
jury, and not a question of law for the court, except in a
case where the facts proven afford no reasonable ground for
the inference drawn."

In *People* v. *Estrada,* 53 Cal. 600, the court said: "The
question as to the intent with which the assault was commit-
ted is a question of fact; and if there was evidence tending
to prove that the intent was as alleged in the indictment the
verdict will not be set aside on the ground that the evidence
is insufficient to sustain the verdict."

We are unable to say from the evidence in the instant
case that there is no reasonable ground from which the jury
could draw the inference that the assailant intended to com-

mit rape, and intended to use all requisite force to accomplish that purpose. The evidence and the surrounding circumstances are susceptible of that inference, and it is therefore a question of fact for the jury. This assailant apparently had every opportunity to know that the prosecuting witness was around her premises, that she was alone, and that she could reasonably be expected to come in soon. Some preparation was shown. Although the evidence shows without conflict that it was a chilly night, the assailant had removed his coat, unscrewed the electric light bulb in its socket so that it could not be turned on in the usual manner, and waited in the darkness just inside the bedroom. He grabbed the prosecuting witness as she entered, and made particular efforts to stop her from screaming, threw her upon the bed, held one of her legs down with one of his legs, and got upon her sufficiently to put the other knee upon her stomach. In our opinion these facts are sufficient to justify the submission to the jury of the question of the intent of the defendant. (*People* v. *Mit Singh*, 59 Cal. App. 64 [209 Pac. 1013].) The intention found by the jury not only appears a most natural and reasonable one, but under the circumstances existing it is rather difficult to imagine any other. The appellant argues that it would be more reasonable to assume that he was committing burglary, that at all times after the appearance of Miss Ruttinger he was attempting to get away, and that he fled as soon as he was able to escape from her clutches. Even if that were the more reasonable view, it would only be one of two conflicting inferences, and is not one that the jury was bound to draw. However, we cannot agree that it is the more reasonable. If his object was burglary no reason appears for his taking off his coat on this chilly night. Nothing in the house was disturbed, although a pocketbook lay on a table, and another on a dresser. If his only object was to escape, he had ample chance while she was engaged in the kitchen, or he could easily have rushed past her in the hall, surprised as she would have been. Or by waiting in the dark bedroom while she went to the center of the room to attempt to turn on the light, which he knew she could not readily do, he would have had a wonderful opportunity for flight. The evidence shows that she did not hold him, but that he held her, and that instead of trying to restrain him, she was

trying her best to release herself from him. Instead of trying to escape, the evidence shows his principal effort was directed toward keeping her from screaming, and holding her down; and that he continued to hold her down in spite of her fighting to release his hands from her body. Appellant argues that he might have accidentally fallen upon the bed in his effort to get away, but the position he assumed and the general circumstances shown justified the jury in reaching a different conclusion.

Appellant further contends that the prosecuting witness was finally overpowered, and that the fact that her assailant then fled, after she was entirely within his power, shows that he had no such intention as that charged. In this regard we are again cited to *People* v. *Fleming, supra.* That was a case where the defendant never intended to use force, but the prosecuting witness had become exhausted by long and continued solicitations and blandishments, and had finally ceased to refuse and oppose the defendant's solicitations. And the court points out that the fact that the defendant then ceased his attempts, and the further fact that he did not flee, were important facts in showing what had been his intention. In the instant case we have a different situation. A careful reading of the entire evidence plainly shows that the prosecuting witness was not completely exhausted and was not completely in the power of her assailant, but that, long before she became exhausted from fighting she was prevented from breathing by the knee in her stomach and the hand on her throat. Nothing appears to indicate that this was more than temporary, nor that her ability to fight would not have been restored had he changed his position to accomplish his purpose. She was fully able to get up, attempt to turn on the light, unlatch the door, walk to a balcony and call for help, as soon as he released her. The fact that he released her and ran indicates that something happened to scare him away, rather than that his entire purpose had been to escape. In any event the facts were sufficient to go to the jury. If the appellant at any time had the intent charged but abandoned it, this fact does not free him from the legal consequences of his act. (*People* v. *Stewart*, 97 Cal. 238 [32 Pac. 8]; *People* v. *Bowman*, 6 Cal. App. 749 [93 Pac. 198].)

The contention that the evidence is not sufficient to support the verdict of the jury is without merit.

■ Appellant complains of the following instruction given to the jury by the court: "Rape, embraces assault with intent to commit rape, also assault. Also embraced within the offense charged in the indictment are two other offenses, viz.: 'Assault with intent to commit rape' and 'assault', sometimes called simple assault. An assault is an unlawful attempt, coupled with a present ability to commit a violent injury on the person of another."

However, appellant admits that in other instructions the jury were told correctly what the charge was. As we understand the objection to this instruction, it is, that it told the jury that the defendant could be convicted either of assault with intent to commit rape, or of simple assault, and the argument is made that the evidence will support a conviction of nothing more than simple assault. This objection is without merit, and the jury were properly instructed that the offense charged included both assault with intent to commit rape and assault. It does not clearly appear that appellant objects to the use of the word "other" in this instruction. This word, as used in the instruction, has no meaning, and should not have been included. However, we fail to see where it could have done any harm, and as appellant himself points out, any possible error was cured by the other instructions.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.