Filed 4/30/25  P. v. Stevens CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMONIE ALFONZOE STEVENS,<br><br>Defendant and Appellant. | A170419<br><br>(Sonoma County<br>Super. Ct. No. SCR7576751) |

Jamonie Alfonzoe Stevens appeals his conviction and sentence after a jury found him guilty of assault with intent to commit rape (Pen. Code,[1] § 220, subd. (a)(1)), making criminal threats (§ 422, subd. (a)), false imprisonment (§ 236), and resisting arrest (§ 148, subd. (a)(1)).  We affirm, subject to a minor correction of the abstract of judgment on remand.

## I.

The prosecution's case rested largely on the testimony of Jane Doe, the assault victim, who was 25 years old when the offenses at issue here took place.  Doe, a Spanish speaker, has limited ability to speak and understand English.  She was at a restaurant in the early morning hours of October 18,

---

[1] All further statutory references are to the Penal Code unless otherwise specifically designated.

2022 with her boyfriend, J.T., celebrating J.T.'s birthday.  At about 12:30 a.m., Doe and J.T. had a fight and she decided to leave on her own.

Doe refused J.T.'s suggestion that she get in his truck so they could leave together.  She tried to reach her brother-in-law by phone to ask him to pick her up, but he did not answer, so she decided to walk by herself to J.T.'s house, which was about a 5-minute drive from the restaurant.  While Doe was walking past a café, defendant appeared.  He came very close to her, within 8 inches, and began to walk next to her, talking to her in English.  Unable to understand what defendant was saying, Doe was scared and began to cry.

Doe walked on, trying to distance herself from defendant.  At an intersection, she tried to cross against a red light to get away from defendant.  Defendant caught up with her and grabbed her hand, trying to stop her from going across the street.  He said something about her "family" and made a gesture with his hand across his throat.  He used the word "fuck" and told Doe to go into a dark area at the side of the road.

Doe tried to flag down passing cars for help, but none stopped.  Defendant slid his hands down Doe's body over her clothes, touching her breasts and continuing to her waist.  She tried to call J.T. for help, but he did not answer.  Defendant took Doe's phone, threw it on the ground, and Doe retrieved it.  At some point Doe opened the Google Translate application on her phone so she could try to understand what defendant was saying to her.

Defendant made several statements into Doe's phone, which the application translated into Spanish.  Doe conceded that the application "didn't really translate [what defendant said] very well."  His recorded statements, as translated into English at trial by the court interpreter, were "We cannot keep on the streets.  We have to walk on the sidewalk otherwise

2

we'll call attention, we'll call the police attention. We have to fuck right now or I may do something bad."[2] Right after defendant made these statements, Doe said, "no." In reaction to her rebuff, defendant yelled at Doe and tried to pull her towards some bushes.

As they continued to walk, Doe turned onto a very dark street where J.T.'s house was located. As they neared J.T.'s house, Doe said in English, "my house, my house." Defendant yelled at Doe and grabbed her from behind, putting his arm around her neck and his hand on her right shoulder, throwing her to the ground, and bruising her leg. Defendant kept his hands on Doe until she screamed.

At that point, defendant let Doe go, and she tried to call J.T. again. Defendant took Doe's phone out of her hand and threw it across the street. Defendant picked up the phone, and Doe repeatedly asked that he give it back to her. Doe walked in the middle of the street, and defendant returned her phone to her. By this point in time, defendant had touched Doe's breasts and buttocks approximately three times while following Doe for over an hour.

---

[2] Defendant's counsel objected on hearsay and lack of foundation grounds to the admission of a transcript of these statements as recorded by the Google Translate application on Doe's iPhone. After conferring with counsel for both sides, the court gave the jury the following limiting instruction in light of these objections: "Google translate is a computer application and not a certified court interpreter or court reporter. The accuracy of a transcribed oral statement or translation of that same statement performed by Google translate has not been established by the evidence in this trial and it is up to you to decide what if any portion of any oral statement described in English or translated into Spanish by Google translate accurately reflects what was actually said. [¶] You may consider the entire statement translated by Google translate for its effect on the listener at the time it was received."

At around 1:30 a.m., Doe tried to call J.T. again and J.T. finally answered. He heard Doe screaming in Spanish, "do not touch me." J.T. immediately left his house and got in his truck. J.T. saw defendant trying to grab Doe while she was trying to climb over a fence in an effort to get to his house. J.T. drove towards defendant and stopped when defendant put his hands on the truck. Defendant then ran away.

Later, Doe identified defendant from a photo lineup. The Sonoma County Sheriff's Office set up a ruse to get defendant to meet them near a downtown mall. Defendant ran away from the officers upon seeing them. An undercover officer grabbed him, and they fell to the ground. Other officers arrived and took defendant into custody. During the arrest, an officer punched defendant once in the face when defendant tried to stand up and pull away. Defendant told the officer that he would attack him once the handcuffs were removed.

Defendant did not testify or present any affirmative evidence at trial. In closing argument, defendant's counsel admitted false imprisonment and resisting arrest and acknowledged Doe's credibility, but argued that the evidence did not establish beyond a reasonable doubt that defendant intended to rape Doe or committed criminal threats.

The jury returned a verdict finding defendant guilty of assault with intent to commit rape, making criminal threats, false imprisonment, and misdemeanor resisting arrest, plus some aggravating factors. The court sentenced defendant to prison for a term of three years on the criminal threats verdict, a consecutive six-year term on the assault with attempt to commit rape verdict, a consecutive eight-month term on the false imprisonment verdict, and a concurrent term of six months on the resisting

4

arrest verdict. It granted 563 total credits for presentence time served. This timely appeal followed.

## II.

Defendant advances three principal arguments on appeal, the first two of which, in essence, reprise his arguments to the jury but in the form of legal challenges to the sufficiency of the evidence.

First, defendant claims the evidence at trial was insufficient to establish an intent to rape Doe. He claims "there was no substantial evidence to support a jury finding that [defendant] harbored the intent to rape, other than . . . Doe's speculation, gathered from a Google Translate application as to what [defendant] said—which she acknowledged did not translate well."

Second, defendant attacks the evidence supporting the criminal threats verdict as insufficient, pointing out that nonverbal conduct alone—here, his hand gesture crossing his throat—cannot support the conviction, especially since Doe admits that she did not understand what he was saying. According to him, nothing he said or did conveyed a threat carrying the requisite gravity of purpose and immediate prospect of execution to support a guilty verdict for committing a criminal threat.

Third, defendant contends the trial court abused its discretion by admitting his statements to Doe translated into Spanish by a Google Translate application on Doe's iPhone. Here, he claims error under Evidence Code sections 350 [relevance], 352 [prejudice and collateral distraction outweighs probative value], 751 [oath required for interpreters and translators], and 753 [foundation required for written translations], as well the confrontation and due process guarantees of the federal and state constitutions.

We see no merit to any of these arguments.

## A.

When a defendant challenges the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether any rational trier of fact could have found the evidence proved the elements of the crime beyond a reasonable doubt. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We draw all reasonable inferences in favor of the judgment and do not resolve credibility issues or evidentiary conflicts. (*Ibid.*) A reversal for insufficient evidence is unwarranted unless it appears upon no hypothesis whatever is there sufficient substantial evidence to support the jury's verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

" '[W]e review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) We must affirm " '[i]f the circumstances reasonably justify the trier of fact's findings,' " even if it appears on appeal " 'that the circumstances might also be reasonably reconciled with a contrary finding . . . .' " (*People v. Hillery* (1965) 62 Cal.2d 692, 702.)

"In the context of a criminal case, the substantial evidence standard stems from the requirement that a criminal conviction necessitates 'proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . .' " (*People v. Mumin* (2023) 15 Cal.5th 176, 198.) Substantial evidence means evidence of " 'reasonable . . . , credible, and of solid value' " (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363), not just any evidence. And reasonable inferences from substantial record evidence " 'may not be

based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.'" (*People v. Davis* (2013) 57 Cal.4th 353, 360.)

But all in all, and no matter how it is phrased or formulated in words, we must always bear in mind that the standard of review on a sufficiency of the evidence challenge is a highly deferential one. Because the finding of facts in our system takes place in the trial court, our power of review is at an end on sufficiency of the evidence questions once we determine that substantial evidence supports all elements of the charged offense. To succeed in the face of this standard, a "defendant bears an enormous burden." (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)

### 1.

Emphasizing that assault with intent to commit rape is a specific intent crime requiring proof of intent to commit a particular kind of sexual act—rape—defendant claims his use of the term "fuck" cannot reasonably support an inference of intent to engage in sexual intercourse with Doe. The term is often used colloquially in many senses, he contends, and the context here does not suggest anything specific. Moreover, defendant argues, none of the conduct he allegedly engaged in—such as stalking, touching Doe's body outside her clothing, taking her phone, or pulling her down to the ground—indicated a specific intent to force Doe into an act of copulation, even if some of it might have sufficed as proof of other uncharged offenses.

We are unpersuaded. Bearing in mind the high bar defendant faces in order to succeed with a claim of insufficiency of the evidence, we conclude there was sufficient evidence to support the verdict on the assault with intent to commit rape count. An intent to rape may be inferred from all the surrounding facts and circumstances. (*People v. Holt* (1997) 15 Cal.4th 619,

7

669.) " 'The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act.' [Citation.] 'In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken.' " (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.)

Defendant emphasizes that, due to Doe's limited comprehension of English, she could not have understood what he meant when he used the word "fuck." But "[i]t is the state of mind of the defendant, not of the victim, which is in issue." (*People v. Roth* (1964) 228 Cal.App.2d 522, 532 ["The victim's conduct and intentions may be pertinent insofar as they aid the jury in evaluating defendant's acts and intent . . . ."].) And in any event, Doe recognized and understood what defendant meant, as indicated by her immediate "no" response upon hearing the Google translation of what defendant said. Although the word "fuck" may be susceptible to various nonsexual meanings, as in a shout of anger or exasperation, it is a commonly recognized euphemism for sexual intercourse. (See, e.g., *People v. Craig*, *supra*, 25 Cal.App.4th at p. 1600 [even though use of "the phrase 'do it' " is "susceptible of more than one meaning, the phrase 'do it' is frequently employed as a euphemism for other terms connoting an act of sexual intercourse . . . ."].)

Understood in the full context of the events Doe described in this case, a reasonable jury could have found defendant intended to use the term "fuck" in a sexual sense. He did not just use the word once in isolation as some kind of exasperated outburst. He used it multiple times, at one point as a verb to describe something he wanted to do *with* Doe: "We have to fuck right now or I may do something bad," he insisted. In addition to ignoring the full context

of his statements to Doe, defendant ignores all of the specific things he *did* to her—his attempt to guide and push Doe to an isolated location in the darkness, his demonstrated sexual interest in her based on the way he touched her, and his intent to overpower her physically and coerce her with threats. Defendant invites us to parse his specific acts and points out that his references to "fuck" were not contemporaneous with the various things he did to Doe. But closing argument was the time to urge that the entire sequence of acts and events here should be interpreted scene-by-scene. Our charge on appeal is to review the record as a whole.

In an effort to harness some case law to support his contention that there was insufficient evidence of intent to rape, defendant cites a number of cases in which convictions were sustained on records where the defendant went further toward completion of a rape than he did on this record. (See *People v. Moore* (1909) 155 Cal. 237, 239 [defendant put his hands under the victim's clothing, tore her underwear and scratched her thighs]; *People v. Porter* (1920) 48 Cal.App. 237, 240 [victim testified defendant tried to make her sit on his lap after he had unbuttoned his pants]; *People v. Leal* (2009) 180 Cal.App.4th 782, 791 [defendant removed the victim's underwear and stuck his finger in her vagina while she was sleeping].) But our Supreme Court has cautioned against focusing on the absence of evidence when evaluating whether sufficient evidence supports a conviction. (See *People v. Story* (2009) 45 Cal.4th 1282, 1299 ["The Court of Appeal erred in focusing on evidence that did not exist rather than on the evidence that did exist."].) The only significance of *Moore*, *Porter* and *Leal* here is to illustrate that, had the facts been different, other circumstances would have supported the same verdict.

9

The evidence is sufficient to support the assault with intent to rape verdict.

## 2.

"While nonverbal conduct alone is insufficient to constitute a criminal threat, a combination of words and gestures may be sufficient. (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190.)" (*People v. Gaines* (2023) 93 Cal.App.5th 91, 140.) Here, defendant said the word "family" and then defendant gestured, slicing across his neck with his hand. Doe testified that she understood the word "family," and understood that defendant was threatening her family when he sliced across his neck.

Defendant claims that Doe told him she had no family and, thus, the evidence did not support a reasonable inference that he had an intent to carry out the threat and that there was no immediate prospect of execution. Here, he relies on an incomplete statement of what happened. Doe testified that, at first, she affirmed to defendant that she had a family: "he said, 'you family' and I said 'yes.'" Doe, in fact, had two children. And it was only after defendant made the slicing gesture that Doe changed her answer. She testified: "I felt more scared and that's when I said that I did not have any family." Defendant also claims that to the extent Doe understood the threat, her family was not present, and the threat could not convey an immediate prospect of execution and gravity of purpose. But the target of a criminal threat does not need to be present when the threat is made.

"With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' . . . the word 'so' in section 422 [means] that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but

10

must be sufficiently present in the threat and surrounding circumstances . . . ." ' [Citations.] 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*In re George T.* (2004) 33 Cal.4th 620, 635.) Considering these circumstantial factors in totality, there is substantial evidence of threats having sufficient immediacy, specificity, and gravity to satisfy this test.

Finally, defendant claims that he might have been yelling to "express[] some sort of angry support for [Doe's] situation of lack of family support at that time as he found her on the street crying and trying unsuccessfully to contact her brother-in-law for a ride as they walked along." But on appeal, we cannot second-guess the fact finder simply because the evidence is consistent with a theory of innocence. And in any event, the evidence does not fairly support the idea that defendant was attempting to show support for Doe. He did not find an abandoned Doe crying on the street; she started crying when he approached her as she walked alone, late at night, fearful for her safety in defendant's presence. On this record, we are satisfied that defendant's words and gestures communicated a criminal threat.

The evidence is sufficient to support the criminal threats verdict.

**B.**

Next, defendant contends the trial court abused its discretion by admitting his statements to Doe that were translated to Spanish by the Google Translate application on Doe's iPhone. He argues, as he did below, that this ruling "circumvented the evidentiary rules that are intended to ensure . . . information relied upon by a jury is trustworthy and accurate." But he adds new grounds not raised below. He now claims admission of the translated statements violated Evidence Code sections 350, 352, 751, and

11

753, in violation of his rights to confrontation and due process. We conclude that defendant forfeited these newly raised arguments by failing to object specifically on those statutory and constitutional grounds in the trial court.

Defendant did object to admission of the Google Translate translations, but the basis for his objection—and the only opportunity he gave the trial court to consider whether an asserted ground for objection, if meritorious, might warrant some cure for the admissibility defect—was an objection on hearsay and lack of foundation grounds. The court summarized this objection to admission of the translation for the truth "as there's been no established foundation for the accuracy of Google translate," and his request for an admonition that the translated statements only be received for the effect on the listener.

Defendant's counsel stated no correction to that restatement of his position. In response to this objection, as the trial court understood it, the court gave the jury a limiting instruction. It drafted a proposed admonition for the jury and it made adjustments to the admonition based on further discussion with counsel. The court queried whether either attorney had an objection to the admonition and defense counsel responded, "No." Having failed to specify any other grounds for objection, we decline to entertain defendant's belatedly raised additional grounds for objection on appeal. " ' "The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal." ' " (*People v. Perez* (2020) 9 Cal.5th 1, 7.)

12

Defendant makes no claim that the applicable law at the time of trial had changed in a manner that excuses him from anticipating it. (*People v. Perez, supra*, 9 Cal.5th at pp. 7–9 [excusing failure to object on confrontation clause grounds in addition to hearsay grounds in trial conducted prior to *People v. Sanchez* (2016) 63 Cal.4th 665].) He does make a cursory claim that objection on other grounds would have been futile, but given the careful attention the court gave to curing the hearsay and lack of foundation objections by crafting a limiting instruction, we cannot say that, had other grounds for objection been raised, the court surely would have rejected them out of hand or seen no reason to invite the prosecution to improve the foundational record already presented.[3]

As for defendant's sole nonforfeited ground of objection—lack of hearsay and lack of foundation—we "review[] any ruling by a trial court as to the admissibility of evidence for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 203.) "Specifically, we will not disturb the trial court's

---

[3] Defendant requests in the alternative that we exercise our discretion to excuse his forfeiture on the ground that the transcript of the statements he made into Doe's iPhone, as translated by her Google Translate application, was so lacking in foundation and so unreliable that its admission violated his due process rights to a fair trial. (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1030–1031, fn. 10.) We do not agree that this asserted error rises to the magnitude of a due process violation or otherwise implicates defendant's substantial rights in a manner that requires us to excuse his forfeiture. Had defendant wished to do so, for example, we see no reason why he could not have put on evidence calling into question the technical reliability and accuracy of the Google Translate application as used in the circumstances here, thus allowing him to contest before the jury the same reliability and accuracy questions he now attempts to raise on appeal, framing them before us as legal questions under the rules of evidence and ultimately under minimum constitutional standards of confrontation and due process, rather as than factual questions for the jury to decide.

ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) Here, there was no error. The trial court did not abuse its discretion in admitting the statements for the limited purpose of the effect of the statements upon Doe as relevant to her state of mind. Defendant agreed to the court's proposed admonition and thus forfeited any other claim of error, i.e., that it "implicitly told the jury"—contrary to the express terms of the limiting instruction the court gave—"that it could consider that evidence in determining what was actually said."

The trial court did not err in admitting into evidence defendants statements to Doe as translated to Spanish by the Google Translate application on Doe's iPhone.

## C.

Finally, defendant claims that at sentencing the court awarded him a total of 563 presentence credits, shorting him two days of credit. The award was based on probation's calculation of 490 actual days and 73 days of conduct credit, for total credits of 563. Defendant claims he should have been granted 492 actual days of credit and 73 days of conduct credit, resulting in 565 total credits. The Attorney General concedes error. We accept the concession and will remand with a direction that the trial court amend the abstract of judgment to rectify the mistake. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 ["[a] sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered"].)

## III.

The cause is remanded with a direction that the trial court amend the abstract of judgment to reflect that defendant is entitled to 492 actual days of

14

credit, 73 days of conduct credit, and total credits of 565.  Subject to that correction, the judgment is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.